IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| RHETT POSEY, § | |
| § | |
| v.  § | A-05-CA-466 LY |
| § | |
| JOHN PASTRANO et al.  § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

The Magistrate Court submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. §636(b) and Rule 1 of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Before the Court is Defendants' Second Motion for Summary Judgment (Clerk's Doc. No. 63). On January 3, 2007, Judge Yeakel referred all dispositive motions to the undersigned for report and recommendation.

**BACKGROUND**

The following summary of the relevant facts, gleaned from the voluminous summary judgment record on file, is set out in the light most favorable to the non-movant in this case, Rhett Posey.[1] On May 17, 2003, Rhett Posey went to a BBQ at his friend Charlie Smith's house in San Marcos, Texas. He showed up at around noon and began drinking. Among other things, while there Posey fired a handgun at a tree in close proximity to other partygoers. After becoming sufficiently intoxicated that he needed to spend several hours inside sleeping, Posey rejoined the party in the

---

[1] Given the nature of the evidence, setting things out in any light favorable to Mr. Posey is no easy task.

evening hours. At some point he got into an altercation with Gilbert (Alberto) Gutierrez. While the two were struggling, another partygoer reached took Posey's gun from him and unloaded it. When Mr. Smith was notified of what was happening he directed others to tell Posey he had to leave and then called the police when Posey refused to leave.

     Deputy John Pastrano, from the Hays County Sheriff's Office (HCSO) was dispatched to the party in response to a 911 call from the party. He states – and his account is corroborated by partygoers – that when he pulled up to Smith's property, Posey was driving erratically around the front lawn and driveway. Pastrano switched on his emergency lights and his spotlight. Posey drove toward Pastrano and stopped about five feet from the cruiser's bumper. Pastrano, who had been informed by the dispatcher that Posey might have a gun (and no doubt encouraged by Posey's erratic driving), pulled out his service weapon and ordered Posey out of the car at gunpoint.

     At this point, Posey contends that he was pulled out of his truck by his hair, and that, in order to place him under arrest, Pastrano kicked him. Pastrano states that Posey got out of truck voluntarily, after numerous orders to do so, and that he had no physical contact with Posey until he was placed into the patrol car. In any event, Posey was put in handcuffs and placed in the back of Pastrano's cruiser. He was interviewed by Pastrano in the back of the patrol car, and then left in the car alone. When Pastrano returned, he found Posey face down on the back seat. Posey contends that when Pastrino returned, he repeatedly asked if he could spit out his chewing tobacco, but Pastrano refused, telling him to swallow it. After three requests, Posey states he was forced to spit out the tobacco on the floor of the cruiser. Posey contends that then Pastrano retaliated by reaching into the

back seat of the car, taking Posey's right pinky finger and twisting it (this has, he claims, permanently disfigured that finger).[2]

Posey brought suit against Pastrano in his individual and official capacities under § 1983 for using excessive force for twisting his finger.[3] Posey has also sued Hays County Sheriff Don Montague in his official capacity under § 1983 for failure to adequately train Pastrano and failure to perform a background check on him.

## ANALYSIS

The standard of review for a summary judgment motion is well-known. Summary judgment is appropriate when "there is no genuine issue of as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In making this determination, the Court views the evidence and all factual inferences from that evidence in the light most favorable to the party opposing the motin and all reasonable doubts about the facts are resolved in favor of the nonmoving litigant. *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004).

**A.    Claims Against Pastrano**

Pastrano contends that he is entitled to qualified immunity as to Posey's claims against him in his individual capacity. The doctrine of qualified immunity shields government officials

---

[2]For his part, Pastrano states that when he returned to his car he found Pastrano prostrate on the seat, spitting his tobacco onto the seat and floor, but that he did nothing to retaliate for this.

[3]Posey originally contended that excessive force was used in the original actions to apprehend and handcuff him, and also in Pastrano's alleged actions in injuring Posey's finger. In his response, Posey only addresses the finger claim, states he is alleging excessive force *after* he was handcuffed, and offers no evidence of any alleged injury resulting from any excessive force prior to the handcuffing. Thus, Posey has abandoned the excessive force claim related to any actions of the defendants prior to his handcuffing, and has limited it to the events set forth in the text.

performing discretionary functions from civil liability " 'insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known.' " *Flores v. City of Palacios*, 381 F.3d 391, 394 (5th Cir.2004). (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  A two-step analysis applies to reviewing a motion for summary judgment based on qualified immunity.  *Id.* at 395.  First, we determine whether a constitutional right has been violated based on the facts Plaintiffs have alleged.  *See id.*; *see also Saucier v. Katz*, 533 U.S. 194, 200 (2001). Second, the Court determines whether the officer's conduct was objectively reasonable in light of "clearly established" law at the time of the alleged violation.  *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir.2000).

To prevail on an excessive force claim, a plaintiff must show: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.  *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005).  In evaluating excessive force claims, courts may look to the seriousness of the injury to determine "whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Pastrano claims that Posey has failed to establish the first element of his excessive force claim: an injury caused by Pastrano.  Pastrano points to a number of pieces of evidence that belie Posey's claim that Pastrano was the source of an injury to Posey's right little finger.  On the night of the arrest, for example, Posey complained to the Hays County Jail paramedic that because the handcuffs had been fastened too tight he had numbness in his forearm(s).  Over the course of next 4-5 hours, the paramedic performed three capillary refill tests on Posey to ensure that there was

4

proper blood flow in his extremities. *See* Capillary nail test, Definition.[4] The test is performed by pressing down on the nail bed until it turns white, then releasing and measuring the time it takes for blood to return to the tissue. *Id*. At no point during any of these tests, when his allegedly painful finger injury was being subjected to an above-normal level of pressure, did Posey complain about finger pain. *See* Affidavit of Michael Vayo, Motion Exh G; *see also* Exh G-1 (paramedic's notes from the night of the incident detailing the tests performed on Posey). In fact, Posey admits that he stood up on a bench to sing songs – including Sister Sled's "We are Family," no doubt an admirable rendition – while detained that night, *see* Motion Exhibit D at p. 92-94, and his mug shot taken that night shows him smiling. Later in the night, at approximately 3:40 a.m., Posey became violent and began hitting the wall of his cell, such that he had to be restrained for two hours in the "violent chair." Motion Exh. G. Perhaps most significantly, he further admits that after his release, he sought no medical attention for the finger as a result of the incident he alleges in his complaint. Posey Deposition, Exh. D, at 123-24.

      Indeed, the first medical attention Posey sought for the finger took place after a car accident about two months after the arrest, and the medical evidence from that accident is even more damning to Posey's claim. In this accident, Posey was rear-ended and sought medical treatment. These records reveal that Posey reported to various doctors that he had injured this very same finger (right hand pinky finger) in the *car accident*, never mentioning Pastrano's action. *See, e.g.,* Exh. D to Defendant's Second Motion for Summary Judgment (at Posey Depo. Exhs. 4 & 5). He told a doctor at the Hill Country Sports Medicine Clinic that "[h]e injured his right knee and his right hand" in "a

---

[4] *Available at* http://www.nlm.nih.gov/medlineplus/ency/article/003394.htm#Definition (last visited September 10, 2007)

motor vehicle accident." *See* Exh K. Nowhere in these records is there any mention of a previous injury to the hand or finger.[5] In addition, while pursuing legal action as a result of the car accident Posey wrote, in response to the directive "Describe all your injuries *following the collision*," that he had suffered a "chipped tooth, sprained knee, finger, neck." *See Client Information Sheet*, Exh H (emphasis added). As noted earlier, Posey admits that the first time he sought medical attention for his finger was after the car accident. Posey Deposition, Exh. D at 123-24.

Also of significance is that, in his response, Posey at no point tries to engage with these admissions; in fact, the only evidence that Posey offers in support of his version of the events is his own, two year-old affidavit. This situation is parallel to well-established cases which hold that "a party may not create a fact issue by submitting an affidavit that contradicts, without explanation, the party's prior deposition testimony." *Cf. Copeland v. Wasserstein, Perella & Co* ., 278 F.3d 472, 482-83 (5th Cir. 2002); *see also John G. Mahler Co. v. Klein Karoo Landboukooperasie*, 58 F.3d 636 (5th Cir. 1995) ("a nonmovant cannot defeat a summary judgment motion by submitting an affidavit which contradicts, without explanation, the nonmovant's previous testimony in an attempt to manufacture a disputed material fact issue.").[6] While Posey did not contradict prior deposition testimony, his affidavit contradicts all of the statements he made to medical providers after his car

---

[5]The summary judgment evidence on this point is voluminous, and is well-summarized in Defendants' Appendix to Second Motion for Summary Judgment, at pp. 9-11.

[6]Along these same lines, it is worth noting that the theory behind the present sense impression is relevant here: "[t]he underlying rationale of the present sense impression exception is that substantial contemporaneity of event and statement minimizes unreliability due to [the declarant's] defective recollection or conscious fabrication." *United States v. Manfre*, 368 F.3d 832, 840 (8th Cir. 2004). Posey's statements to the doctors he saw after the car accident were made two months after the alleged event with Pastrano, in the summer of 2003, while his affidavit (claiming a finger injury during the arrest) is dated August 23, 2005, two years later.

accident, which contended that he injured his finger in the car accident, not in an altercation with a police officer. Looked at in light of all the facts, such an affidavit cannot create a genuine issue for trial. Instead, this looks to be an injury whose cause changes when it suits Posey's litigation strategy. While Posey might complain that his credibility is an issue for a jury to determine, he runs up against recent Supreme Court precedent dealing with this issue. Citing the well-known *Matsushita Electronics* case, the Court, in *Scott v. Harris* stated: "As we have emphasized, '[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " 127 S. Ct. 1769, 1776 (2007) (citing *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986)). This is exactly the case here. Indeed, a rational trier of fact could conclude from the summary judgment record that Mr. Posey is attempting to perpetrate a fraud on the court by claiming that he suffered the finger injury in the arrest, when he told doctors years earlier that he injured it in a car accident.

Given all this, no rational trier of fact could conclude that Pastrano injured Posey that night, Pastrano should be granted summary judgment on the claims against him in his individual capacity.[7]

---

[7]Posey has also asserted claims against Pastrano in his official capacity. The Supreme Court has emphasized that official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 24 (1991). That is, any claims against public officials in their official capacity are treated as claims against the governmental entity involved. *Id.*; *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996). In *Romero v. Becken*, the Fifth Circuit affirmed a dismissal of Section 1983 claims against city officers in their official capacities because the plaintiff also asserted the same claims against the city. 256 F.3d 349, 355 (5th Cir.2001) (affirming dismissal of Section 1983 claims against city officials in their official capacities because they duplicated the claims against the city). The Court reasoned that the claims against the city officers in their official capacities duplicate the claims against the city because to hold both the city and its officers liable for the same claims would make the city liable twice for the

B.   **Claims Against Hays County Sheriff's Office**[8]

42 U.S.C. § 1983 is the legal vehicle for individuals to vindicate their federal constitutional rights against persons acting under color of state law. 42 U.S.C. § 1983; *Manax v. McNamara*, 842 F.2d 808, 812 (5th Cir. 1988). Municipal liability under 42 U.S.C. § 1983 requires proof of: (1) a policymaker; (2) an official policy; (3) and a violation of constitutional rights whose 'moving force' is the policy or custom. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003). "Municipalities can be held liable only when an injury was inflicted by a government's 'lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121–22, 108 S. Ct 915, 923 (1988) (citing *Monell v. New York City Dept. Of Soc. Servs.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 2036 (1978). This prevents a municipality from being liable under § 1983 simply for employing a tortfeasor; that is, a municipality cannot be liable under a *respondeat superior* theory. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). An "official policy" is either a policy statement, ordinance, regulation, etc., that has been officially adopted by a policymaker, or a persistent, widespread practice of officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents the municipality's policy. *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005). "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability

---

same claims. *Romero*, 256 F.3d at 355. *Romero*'s reasoning applies equally to Posey's official capacity claims against Pastrano; he is asserting the § 1983 claims against HCSO. Accordingly, the claims against Pastrano in his official capacity should be dismissed.

[8]Posey sued Sheriff Don Montague in his official capacity. As noted above in footnote 7, this amounts to a claim against the municipal entity itself.

on the theory that the relevant practice is so widespread as to have the force of law." *Id*. The policymaker must have either actual or constructive knowledge of the alleged policy, due to its duration and frequency. *Id*.

Posey's first contention is that the mere fact that there was 81 complaints made against HCSO deputies in the two years preceding his arrest shows a widespread custom in HCSO of using excessive force in arrests that is consonant with an official policy. The argument fails to cope with the fact that during this two year period there were 94,408 police-citizen contacts. That means that less than one-tenth of one percent, a vanishingly small percentage, of police-citizen contacts resulted in excessive force complaints. Even assuming, perhaps implausibly, that all 81 complaints were credible, this is not enough to create a fact question. *See, e.g.*, *Hinojosa v. Butler*, No. SA-05-CV-228 OG, 2006 WL2711823, (W.D. Tex. Sep. 21, 2006) (dismissing on summary judgment an excessive force complaint where the ratio of excessive force complaints to police-citizen contacts was roughly 1-in-1200). The mere fact that excessive force complaints have been filed against the City does not in itself provide a basis for municipal liability "[a]bsent additional evidence that the City's efforts to evaluate the claims 'were so superficial as to suggest that its official attitude was one of indifference to the truth of the claim' . . . ." *Peters v. City of Biloxi*, 57 F. Supp.2d 366, 378 (S.D.Miss.1999) (quoting *Fiacco v. City of Rensselaer*, 783 F.2d 319, 328 (2d Cir.1986)). Posey has not done so.

But this is not to miss the larger point here: given that Posey cannot show an injury took place at the hands of Pastrano, all of Posey's claims against HCSO should be dismissed because there is no predicate act by Pastrano on which to base his claims against HCSO (e.g, failure to train Pastrano properly, failure to perform background check on Pastrano). Therefore, HCSO's (i.e.,

Montague's) motion for summary judgment should be granted as to § 1983 official capacity claims against it.

## III.  RECOMMENDATION

The Court **RECOMMENDS** that Defendant Second Motion for Summary Judgment (Clerk's Doc. No. 63) be **GRANTED** as set forth above, and that judgment be entered that Plaintiff take nothing on his claims.

## IV.  WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is

directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 20th day of September, 2007.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE